WHITE v. COULTER *et al.*, appellants.

T. & C.
3 T&C 608
168 NY 435

*Judgment in foreclosure suit — setting aside — resale — Irregularities — Appealable order — Notice of lis pendens — Execution — direction in — Parties — Husband and wife — rights of wife on mortgage foreclosure.*

On a motion to set aside a judgment of foreclosure and a sale thereunder, it appeared that the defendants had no defense to the action, and the mortgagor knew it, and never hoped or expected to succeed in the defense, and was only seeing if the action could not be "staved off or beaten ;" that after failing in his efforts to arrange the matter and stop the foreclosure, he declared that the plaintiff might "take the property and go to hell with it, and if he got any thing out of him (the mortgagor) he would be lucky ;" and that he

White v. Coulter.

disposed of a large amount of property, and put himself in a condition to defy, as far as possible, any judgment for deficiency. He did not show that the judgment was unjust, or that the new answer proposed to be put in could be sustained by proof, or justified by the law, nor give any reason why the sale should be set aside. The court was satisfied that the allegations in such answer were not true, and that the defendant's absence from the sale was voluntary and intentional. And he did not offer to bid more upon a resale, although $15,000 to $20,000 of improvements had been put upon the premises since the sale. *Held*, that the defendant was not entitled to have the judgment set aside, and an amended answer served as a *favor*, for the reason that he did not show any *defense* or any *merits*.

An order denying a motion to set aside a judgment of foreclosure, and the sale thereunder being in the discretion of the court, is not appealable in the absence of any pretense that such discretion has been abused.

A resale of mortgaged premises will not be granted, where it is not pretended that there has been any fraud, misconduct or surprise.

When a trial is had, upon due notice, before a justice of the court at a special term, held by regular appointment, with the consent of the defendant's attorney, who participates in it without objection, jurisdiction of the persons and of the subject-matter is complete, and if there is any irregularity as to the *place* of trial, it is cured by the appearance and consent of the defendant's attorney.

Although an affidavit of filing notice of *lis pendens* be defective, yet, if a proper notice was in fact duly filed, and no objection is made to the sufficiency of proof of that fact by the defendant's attorney, the defect in the notice will not, in any event, render the judgment void, but is a mere irregularity, which may be disregarded or amended under sections 173, 176 of the Code, in the absence of any wrong or injury to the defendant. And the court may allow such proof to be made and filed *nunc pro tunc*.

Persons claiming under the defendant, but not parties to the action, being the only persons whose rights are or can be affected by the suit, they, only, can take advantage of the omission to file a notice of *lis pendens*.

The nomination, by one party, of a referee in a mortgage case, the approval of the opposite party, and his appointment by the court, is no violation of rule 73, and no irregularity.

The entering of a judgment within four days after the decision is, if an irregularity, waived by the defendant's consenting to the entry, and allowing a sale to be confirmed. The requirement of the Code, on that subject, is so far directory, only, that a neglect of its provisions will not, in the absence of wrong or injury to the defendant, occasioned by the premature entry of judgment, be considered.

An execution was, upon its face, directed "To the sheriff of the county of county," but, upon the outside, under the title of the action, were the words, "Execution to Saratoga county," with directions to levy, etc., signed by the plaintiff's attorney. *Held*, that enough appeared by the indorsement to show the direction of the writ to the sheriff of Saratoga county.

When a mortgage is given by husband and wife for the purchase-money, the

wife, during her husband's life-time, has no existing claim upon, or separate interest in, the mortgaged property, but only a possibility, and service of the summons in a foreclosure suit upon the husband will bind the entire title, except such possibility. Service upon the husband, only, is good as to the wife, and the husband is bound to appear for her, or the default of the wife may be taken as if she were personally served.

APPEAL by the defendants from an order of the special term, made on the 18th day of November, 1873, denying defendant's motion to set aside the judgment of foreclosure and the sale had pursuant thereto in the above-entitled action, with $10 costs to plaintiff.

By the defendants' notice of motion, dated March 18, 1873, an order was asked, setting aside such judgment and for a new trial, on such terms as might be just, and also on irregularities, as follows: 1. That the trial was irregular as to time and place, and the court had no jurisdiction, for that reason, of the parties or cause of action, the attorney for defendant James E. Coulter having no authority to waive the objection. 2. That the affidavit of filing of notice of *lis pendens* was defective. 3. That the appointment of a referee to sell, at plaintiff's request, was irregular and void, and the fee reserved by him excessive. 4. That the direction to sell in one parcel was improper. 5. Defendant James E. Coulter asked leave to serve an amended answer. 6. Defendant Amelia A. Coulter asked that all proceedings as to her be set aside, because she was not served with the summons, and never appeared or authorized any one to appear for her.

By the second notice of motion, dated March 24, 1873, the following additional irregularities were alleged: 7. That the judgment was entered irregularly, within four days after the decision of the judge who tried the action. 8. That there was no reference to inquire whether the premises should not be sold in parcels, as required by the rules.

By the third notice of motion, it was asked that the judgment for deficiency of $18,911.94, be vacated, for the following reasons and irregularities, to wit: 9. That it was prematurely entered, as in No. 7, *ante*. 10. That it was entered before the end of eight days after the filing of the report of sale. And the execution upon said judgment was asked to be set aside: 11. Because it was prematurely issued before the end of eight days after the filing of referee's report of sale. 12. Because not directed to the sheriff of Saratoga

county, or any other sheriff. 13. Also, that the judgment, sale and all proceedings be set aside, on account of the fraud of plaintiff, as alleged.

All errors, defects and irregularities, disclosed by the moving papers, are insisted upon in favor of the motion, and such further and other relief as shall be just, is asked for.

A regular special term of the supreme court was designated by the justices to be held, and was held by Mr. Justice BOCKES, at the town hall, Saratoga Springs, on the 9th of July, 1872, and this action was noticed for trial thereat; but Mr. Justice JAMES being engaged at the same time and place in holding an adjourned special term this action was, by the consent of defendants' attorney, tried before Mr. Justice JAMES. Upon hearing of these motions, they were denied, and defendants appeal from the order denying the same.

*A. Pond,* for appellants.

*Esek Cowen* and *L. B. Pike,* for respondent.

BOARDMAN, J. Upon reading the great mass of evidence, upon which this order appealed from was granted, certain facts appear to be well established, and need to be stated for a safe disposition of the various points raised.

On the 9th of September, 1871, defendant James E. Coulter bought of plaintiff, the White hotel property at Saratoga Springs, at the price of $51,000, paying down but $500 cash and giving a bond and mortgage for the balance of the purchase-money (less a small lien assumed), $49,355, interest thereon being payable semi-annually, and the first payment of principal, $6,500, to become due September 9, 1874; and further providing that if interest due should remain unpaid for twenty days, the whole principal should become due at plaintiff's option. As this security was not adequate, defendant James E. Coulter gave his bond to improve such property by the expenditure of $12,000 thereon within eight months from the date of the deed, and, upon failure, to forfeit and pay, as liquidated damages, $10,000 ; the same to be applied upon the bond and mortgage. Nothing was ever done in performance of this condition or agreement. Immediately after such purchase, one Gaffney was appointed the defendant's agent to manage said property (defendant living in New York city), to collect rents, etc. The plaintiff

was never such agent, except to collect a small amount of rents, to re-imburse him for money paid for insurance and taxes upon the property.

On the 9th of March, 1872, the semi-annual interest due on said bond and mortgage was not paid to plaintiff, but only a part thereof, between $400 and $500; nor was the same paid within the twenty days thereafter. On the 8th of May, 1872, an action for the foreclosure of said mortgage was begun by the plaintiff, and the summons served on defendant James E. Coulter, and possibly on defendant Amelia, the wife of James. Defendant James put in an answer, setting up payment of interest on the 9th of March. Defendant Amelia did not appear, although James had the summons alleged to have been served upon her and talked about her ability to answer. James E. Coulter tried to stop the foreclosure suit by offers to turn out securities, but the parties were unable to agree upon terms, and Coulter, by his language, indicated an intention to abandon the property and let plaintiff get what he could.

On the 9th of July, 1872, the action was brought to trial, upon due notice to the defendant's attorney; notice by mail and telegraph having been given to James E. Coulter, and probably received by him. By consent of defendant's attorney (Coulter not appearing), the case was tried by Mr. Justice JAMES, at the town hall in Saratoga Springs. Defendant's attorney appeared on such trial and cross-examined plaintiff, who was sworn as a witness on his own behalf. Evidence was also given as to the condition of the property, and the possibility of its being sold in parcels. On the 12th of July, 1872, a decree, assented to by defendant's attorney, was signed by the judge, the costs having been allowed by defendant's attorney, except the extra allowance which was made by the court. The judgment was entered on that day with the knowledge of the defendant's attorney and without his dissent. John Foley, an attorney occupying the same office with plaintiff's attorney, but in no way connected with him in business, was appointed a referee to sell, with the assent of defendant's attorney.

On the 7th of September, the premises were sold at public auction, and purchased by plaintiff, for the sum of $35,000. Notice of such sale was also sent to defendant, but he did not appear except by his attorney. On the same day, the report of the referee was made and confirmed at a special term, at the town hall, Saratoga Springs, before Mr. Justice BOCKES, the order reciting that

E. H. Peters appeared and consented, as counsel for the defendant, and which is confirmed by the memory of Judge BOCKES, impressed upon him for reasons given. The report of sale was filed, and judgment against defendant James E. Coulter, for the deficiency, $18,-911.94, was entered September 10, 1872. On the 16th, an execution for such deficiency was issued and delivered to the sheriff of Saratoga, in the usual form, except that upon the inside of same, it was directed, "To the sheriff of the county of county." On the outside, under the title of the action, were the words, "Execution to Saratoga county," with directions to levy, etc., signed by plaintiff's attorney. By virtue of this execution, sums, in all amounting to about $2,000, were collected from rents due defendant from other property. Other executions were issued to the county of New York. On the 1st of October, 1872, defendant James was examined on supplementary proceedings in the city of New York, and about October 18, 1872, an action, in the nature of a creditor's bill, was begun against defendants, to reach the property of defendant James, the defendants appearing and answering separately, about November 1, 1872, admitting the judgment.

After the sale, plaintiff, to the knowledge of defendant James, put improvements upon the property of the value of $15,000, or over, and in January, 1873, contracted to sell the property to Charles S. Lester, for $69,000, and give a warranty deed. The value of the property, on the 7th of September, upon a forced sale, was not over $40,000, but has since much increased, from other causes besides the improvements put thereon by plaintiff and others. Plaintiff has received from Lester, upon his contract of sale $16,000, and the purchaser or his assignees have expended some considerable money in improvements upon the property. Before the recovery of the judgment for the deficiency, James E. Coulter disposed of a large amount of property, so that it could not be reached by an execution, and has at no time offered to give security for the debt, if the judgment shall be opened.

On the 18th of March, 1873, and more than six months after the sale under the foreclosure, and judgment for the deficiency, the first motion papers are made out and served. It is apparent, from all the papers presented on this appeal, that the defendants had no defense to this action; that Mr. Coulter knew it, and that he never hoped or expected to succeed in the defense. In the language of A. P. Smith & Co., June 15, 1872, he was see-

ing if this action could not be "staved off or beaten." After failing in efforts to arrange the matter and stop the foreclosure, he concludes that plaintiff may "take the property and go to hell with it, and if plaintiff got any thing out of him, he would be lucky."

In accordance with this determination, Mr. Coulter disposes of a large amount of property, and puts himself in a position to defy, as far as possible, any judgment for deficiency that may be rendered against him. Had one tithe of the energy and industry, bestowed by Mr. Coulter in the search for, and exposure of, irregularities and technicalities, been exercised by him in attention to his defense, or in the protection of his interests upon the sale, no necessity for his present motion would have existed. If Coulter did not know in advance when the trial was to take place; if he did not learn of the trial and judgment within a few days thereafter; if he did not know, in advance, of the time and place of sale; if he did not learn of the judgment for the deficiency in a few days after its entry; then appearances are very deceitful. It may be, as Mr. Coulter swears, that such indications are false, but if so, he must have taken special pains to prevent communications reaching him.

Upon such conclusions as to the facts, the defendant is not entitled to have the judgment set aside and an amended answer served, as a favor, for the simple reason that he does not show any defense or any merits. He does not show that the judgment rendered is unjust, or that the new answer proposed can be sustained by proof, or justified by the law. As before said, the judgment is right, and the allegations of the amended answer are not true. The weight of evidence in the appeal papers sustains both these assertions.

Nor is any satisfactory reason given why the sale should be set aside. Perhaps it is sufficient to say that the order, being in the discretion of the court below, is not appealable, in the absence of abuse of such discretion, of which there is no pretense. *Kingsland* v. *Bartlett*, 28 Barb. 480; *Wakeman* v. *Price*, 3 N. Y. 334; *Buffalo Savings Bank* v. *Newton*, 23 id. 160. But the sale should be sustained upon the merits. Enough appears to convince the mind that Mr. Coulter's absence from the sale was voluntary and intentional. His neglect, for over six months thereafter, during which time he was pursued by supplementary proceedings and creditors' actions under this judgment for deficiency, is sufficient evidence that the sale was not objectionable in itself, but only by reason of the consequences. But there is no evidence that the property brought an inadequate price,

or that it would have brought a greater price, had all the persons who have sworn to its value been present. Even Mr. Coulter does not offer to bid more upon a resale, after $15,000 to $20,000 of improvements have been put thereon, and other circumstances have added to the value of the property. While the property may have been worth, on the day of sale, $50,000 at private sale on long credit, it would be unreasonable to suppose that it would bring that sum in cash, at a forced sale. Such is not human experience. The very sale, made by plaintiff to defendant, is evidence of an extreme price, and a fair conclusion from the affidavits produced would not carry the market value above $40,000 on the day of sale. There was, therefore, no such inadequacy of price, as should lead to a resale by the order of the court. This is the more evident, since no indemnity for expenses of sale or improvements made is offered, nor is there any guaranty that more than $35,000 will be bid upon a resale. The defendant knew that plaintiff would not bid above $35,000. It is not pretended there was any fraud, misconduct or surprise that should invalidate the sale. Under such a state of facts, a resale should not be granted. *Whitbeck* v. *Rowe*, 25 How. 403; *McCotter* v. *Jay*, 30 N. Y. 80; *Lefevre* v. *Laraway*, 22 Barb. 167; *Duncan* v. *Dodd*, 2 Paige, 99; *Amer. Ins. Co.* v. *Oakley*, 9 id. 259.

Nothing remains but to examine the various irregularities and defects alleged, and see whether any of them are of a character to avoid the judgment or sale, or to render it proper, in the furtherance of justice, to interfere therewith by setting the same aside, and ordering a resale. 1. The trial in the town hall in Saratoga Springs, before Justice JAMES, was with the consent of defendant's attorney, who participated in it without objection. A special term was then and there held, by regular appointment of the judges. The case was regularly noticed for trial at that term. The jurisdiction of the persons and of the subject-matter was complete, and if there was any irregularity as to the place where the trial was had, it was cured by the appearance and consent of defendant's attorney. Code, § 179. 2. The affidavit of filing of notice of pendency of action was defective. Rule 72. But a proper notice was, in fact, duly filed, and no objection was made to the sufficiency of proof of that fact by defendant's attorney. The court could allow such proof to be made and filed *nunc pro tunc*. It does not in any event render the judgment void, but is a mere irregularity (*Potter* v. *Rowland*, 8 N. Y. 448; *Curtis* v.

*Hitchcock*, 10 Paige, 399), and might well be disregarded or amended under the Code, §§ 173, 176, in the absence of any wrong or injury to defendant. But a further reason why this objection should not avail, arises from the nature and the object of the notice and the filing. It is made by statute, constructive notice to persons who claim under the defendant in the action, but are not parties to it. As their rights only are or can be affected, it is reasonable that they only should be heard to take advantage of its omission (8 N. Y., and 10 Paige, *ante*), and no such persons appear in this action. 3. The nomination by one party of a referee, the approval by the opposite party, and thereupon, his appointment by the court, is no violation of the rules of law (Rule 73), and no irregularity. Foley was not a clerk of plaintiff's attorney, nor ineligible. 4. The assent of defendant's attorney to the form of the decree is an answer to the claim that the premises should have been sold in parcels. But this objection was waived upon the argument. 5. The motion for leave to serve an amended answer has already been considered. 7. The entering of the judgment, within the four days after the decision, was, if an irregularity, waived by defendants, in consenting to the entry, and allowing confirmation of sale. Besides, I am of the opinion that the requirement is so far directory, only as that a neglect of its provisions will not be considered in the absence of wrong or injury to the defendant. *Lewis* v. *Jones*, 13 Abb. 427; *Stewart* v. *Slater*, 6 Duer, 83. There is no evidence that this premature entry of judgment has deprived the defendant of any right, or prevented any action he would otherwise have taken. The eighth objection was waived upon the argument. 9th. This has been considered under the seventh objection. The tenth and eleventh objections relate to the entry of judgment for deficiency, and to the issuing of execution on such judgment, within eight days after filing report of sale. These points are not now specially urged. The twelfth objection relates to defects in the execution. Enough appeared to show its direction to the sheriff of Saratoga county, by the indorsement.

The only remaining objection touches the alleged want of service of summons upon Mrs. Coulter. We will assume that it was not served, for this discussion. As against the plaintiff, who was mortgagee, and those claiming under him, Mrs. Coulter had no claim against this property, because the mortgage was given for purchase-money. She had only an inchoate right of dower in the surplus realized after sale under the mortgage, which could only ripen into

an absolute right upon the death of the husband, leaving her surviving. She therefore had no existing claim, at the date of this foreclosure, and no separate estate in the property, but only a possibility. *Mills* v. *Van Voorhies*, 20 N. Y. 412. Service upon the husband would bind the entire title, except such possibility. For that reason, perhaps, it has been held in *Foote* v. *Lathrop*, 53 Barb. 183; affirmed in 41 N. Y. 358; *Eckerson* v. *Vollmer*, 11 How. 42; *Lathrop* v. *Heacock*, 4 Lans. 1; and in the unreported case of *Hendrickson* v. *Hendrickson*, in this department, that a service upon the husband only is good as to the wife, and the husband is bound to appear for her, or the default of the wife may be taken as if personally served.

The cases cited by defendant's counsel are not in point. *Bean* v. *Mather*, 1 Daly, 440; *Williams* v. *Van Valkenburg*, 16 How. 144; *Bulkley* v. *Bulkley*, 6 Abb. 307; *Baldwin* v. *Kimmel*, 16 id. 353. All of them are cases where relief was sought against the persons not served, and a personal judgment was rendered against them. But if such personal service upon the husband did not bind the wife and operate as a service upon her also, the most that can be said is, that her rights are not foreclosed. *Mills* v. *Von Voorhies*, 20 N. Y. 412. And if she shall survive her husband, whereby her inchoate right of dower would ripen into an absolute right of dower in the equity of redemption, she may then take her proceedings, and a judgment of foreclosure, to which she was not a party, will not bar her rights.

A laborious examination of the appeal papers has satisfied this court that the learned judge who decided this motion at special term, has fully appreciated the merits and faithfully discharged his duty, in .declining to grant defendant's motion, or any part thereof.

The order of the special term is therefore affirmed, with $10 cost of appeal.

*Order affirmed.*